IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES MIMS,      )
           )
    Plaintiff,    )   2:20-CV-01814-CCW
           )
   v.       )
           )
CITY OF NEW CASTLE,   )
           )
    Defendant.   )

## MEMORANDUM OPINION

Before the Court is the City of New Castle's ("New Castle") Motion to Dismiss James Mims' ("Mr. Mims") Amended Complaint. *See* ECF No. 12. For the reasons that follow, New Castle's Motion will be GRANTED.

## I. Background

Mr. Mims is a landlord who owns rental properties in the City of New Castle. He alleges that, because he typically rents to racial minorities, people with disabilities, and low-income persons, New Castle has, under its rental property inspection program, a custom and/or policy of denying or delaying the issuance of occupancy permits to Mr. Mims and citing him for building code violations for illegitimate reasons.

### A. Procedural History

Mr. Mims filed his complaint on November 18, 2020, and his operative Amended Complaint on February 24, 2021. *See* ECF Nos. 1, 10, & 11. The Amended Complaint includes eleven Counts: Counts II through VII allege violations of various federal constitutional rights

pursuant to 42 U.S.C. § 1983[1];  Count I—which does not invoke Section 1983 –alleges a violation

of Due Process under the federal and Pennsylvania constitutions;  Count VIII alleges a violation

of 42 U.S.C. § 1982;  Count IX alleges a violation of the federal Fair Housing Act, 42 U.S.C. §

3601 *et seq.*;  and Counts X and XI allege state law claims for tortious interference with contract

(Count X) and abuse of process (Count XI).

New Castle's Motion seeks dismissal of Mr. Mims' Amended Complaint pursuant to Fed.

R. Civ. P. 12(b)(6) for failure to state a claim.  *See* ECF No. 12.

Following the filing of New Castle's Motion, Mr. Mims filed a Response in Opposition,

and New Castle filed a Reply.  ECF Nos. 15 & 16.  After review of the parties' briefing, the Court

ordered supplemental briefing to address certain issues related to Count II (Equal Protection),

Count IV (Commerce Clause), and Count VII (Fair Housing Act).  ECF No. 18.  The parties duly

filed supplemental briefs, ECF Nos. 23 & 24, and New Castle's Motion is now ripe for disposition.

### B.    Factual Allegations

The relevant facts alleged in the Amended Complaint are as follows.  Mr. Mims alleges

that for the past 15 years he has been in the business of purchasing, refurbishing, and renting

housing units located within the City of New Castle, either in his own name or in the name of his

solely owned realty company, Mims Realty, LLC.  ECF No. 11 ¶¶ 12–14.  Mr. Mims alleges that

(1) the vast majority of people to whom he rents have low to moderate incomes, (2) about 50% or

more of Mr. Mims' rentals are to people with some degree of mental or physical disability, and (3)

about 10% to 15% of his rentals are to people who are properly classified as ethnic minorities,

---

[1] Plaintiff's Section 1983 claims assert violations of the following federal constitutional provisions:  Count II – 14th Amendment – Equal Protection;  Count III – 14th Amendment – Due Process;  Count IV – Article I, Section 8 – Commerce Clause;  Count V – 8th Amendment;  Count VI – Fifth Amendment –Takings Clause;  Count VII – Fourth Amendment.

with a large percentage of these minorities being African American.  *Id*. ¶¶ 15–17.  By comparison, Mr. Mims alleges that the City of Newcastle's population is approximately 83.2% white, 12.2% African American, 1.6% Latino, 0.1% Native American, 0.4% Asian, 0.1% Pacific Islander, with approximately 27.2% of the population living below the poverty line.  *Id.* ¶¶ 9–10.

Mr. Mims alleges that, from approximately 2006 through January 2019:  (1) he was customarily deprived of his right to rent his units for a period of approximately 30 to 90 days, due to the City's denial of occupancy permits, *id*. ¶¶ 26–27;  (2)  his rental properties "have also been the subject of numerous additional, non-permit related inspections by the City of New Castle," and that no explanation was given for these inspections, *id*. ¶¶ 27–28;  (3) the "City of New Castle issued citations to him and/or his realty company on at least fifty (50) separate occasions for alleged violations of the International Property Maintenance Code," all but one of which Mr. Mims successfully challenged the Magisterial District Court, *id*. ¶¶ 29–30.

Mr. Mims asserts that New Castle had a "custom, policy and practice of taking punitive measures against certain property owners, including [Mr. Mims], who disagree or defy the rental restrictions imposed against said property owners." *Id*. ¶ 37.  In particular, Mr. Mims alleges that "statements and comments were made by elected officials and department heads that encouraged the radical enforcement of code enforcement laws and the rental inspection program… with the specific purpose of eliminating the availability of rental units to African American or other minority tenants, government subsidized tenants, or mental or physically disabled tenants."  *Id.* ¶ 23.  He further alleges that "elected officials and department heads made racist and derogatory comments about Plaintiff's prospective tenants" and "verbalized their displeasure of [Mr. Mims] practice of renting his units to persons of minority ethnic background, particularly African-Americans, as well as mentally disabled individuals."  *Id*. ¶¶ 33–34.  Mr. Mims alleges that he

3

"was specifically informed that if [he] rented his properties to [such persons], unfavorable actions would be taken against [him]."  *Id.* ¶ 35.  Mr. Mims alleges the existence of handwritten instructions and "a written list of certain property owners, including [Mr. Mims]," that was circulated among elected officials and employees with instructions to carry out unwarranted inspections and issue citations, regardless of the actual conditions of the properties.  *Id.* ¶¶ 38–39.

Mr. Mims' Amended Complaint does not identify or describe any specific citation, failed inspection report, or denial of occupancy permit during the 13-year time period covered in the Amended Complaint.

## II.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be sufficient "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under the notice pleading standard imposed by Federal Rule of Civil Procedure 8, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.,* 809 F.3d 780, 789 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss").

Finally, if a civil rights claim is dismissed pursuant to Rule 12(b)(6), the Third Circuit has held that the district court must provide leave to amend "unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236; *see also Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) ("In our Circuit, 'district courts must offer amendment [in civil rights cases]—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.'") (citation omitted)). Amendment is futile where an amended complaint could not withstand a renewed motion to dismiss. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

III.     **Discussion**

The Court will first analyze the Counts that the parties specifically addressed in their initial and supplemental briefing, and then analyze New Castle's general argument that the Amended Complaint, in its entirety, fails to make out any plausible claim as required by *Twombly* and *Iqbal*.

### A.     Count II: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment Equal Protection Clause

Count II of the Amended Complaint, brought pursuant to 42 U.S.C. § 1983, asserts that New Castle has violated the Fourteenth Amendment's Equal Protection Clause by discriminating against Mr. Mims "on the basis of race and national origin in the leasing of real property."  *See* ECF No. 11 ¶ 59.  The parties did not specifically address the Equal Protection claim in their initial briefing, and the Court therefore ordered supplemental briefing on this claim.  In his Supplemental Brief, Mr. Mims clarifies that he seeks to make a "class of one" Equal Protection claim and alleges that New Castle "has treated him differently from other landlords in the area by filing frivolous citations for alleged code violations."  *See* ECF No. 23 at 6–9.  Mr. Mims asserts that such difference in treatment is a result of New Castle's "malicious contempt for minorities and individuals with disabilities" and thus, "irrational and wholly arbitrary."  *Id.* at 9.  New Castle, in turn, contends that Mr. Mims fails to allege that he was treated differently than other individuals.  ECF No. 24 at 3–4.

[T]o state an Equal Protection claim under a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (discussing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).  At the motion to dismiss stage, a complaint must allege facts sufficient to make plausible the existence of "similarly situated individuals and allege that the

plaintiff was treated differently." *Myers v. Shaffer*, No. 02:11-cv-01107, 2012 U.S. Dist. LEXIS 117993, at *33 (W.D. Pa. Aug. 21, 2012) (McVerry, J.); *Iman v. Borough of Meyersdale*, No. 3:19-cv-36, 2019 U.S. Dist. LEXIS 112405, at *16–17 (W.D. Pa. July 8, 2019) (Gibson, J.); *see also*, *Perano v. Twp. of Tilden*, 423 F. App'x 234 (3d Cir. 2011) ("Without more specific factual allegations as to the allegedly similarly situated parties, [plaintiff] has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects." (internal citations and quotations omitted)).   "To be 'similarly situated,' parties must be 'alike in all relevant aspects.'" *Perano*, 423 F. App'x, at 238 (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks omitted)).

Here, Mr. Mims alleges that "[New Castle] harassed and intimidated [Mr. Mims], with its ultimate intent of driving low-income minorities and special needs renters from the area and ban[ning] [Mr. Mims] from engaging in the rental property business within the City of New Castle." *See* ECF No. 11 ¶ 2.  But Mr. Mims "does not identify the similarly situated individuals, nor does [he] explain how [he] was treated *differently* than those individuals." *See Iman v. Borough of Meyersdale*, No. 3:19-cv-36, 2019 U.S. Dist. LEXIS 112405 (W.D. Pa. July 8, 2019) (Gibson, J.) (emphasis added); *see also*, *Perano*, 423 F. App'x, at 238–39.  To the contrary, Mr. Mims' Amended Complaint contains allegations that certain individuals who also rent to minorities and individuals with handicaps are treated in the *same* way as Mr. Mims.[2]  Because

_____

[2] ECF No. 11 ¶ 65 (alleging Defendant's "custom and policy [] developed to classify those landlords and property owners with a propensity to offer for rent… [to certain types of individuals]"); *see also id.* ¶ 39 (alleging "punitive inspections of certain properties, known to be owned by Plaintiff *and certain other individuals*" (emphasis added)); *id.* ¶ 44 (alleging a refusal "to withdraw improperly issued citations issued to Plaintiff *and others*" (emphasis added)); *id.* ¶ 37 (alleging "a custom, policy and practice of taking punitive measures *against certain property owners, including Plaintiff*" (emphasis added)); *id.* ¶ 3 (alleging Defendant's directives "to engage in unwarranted inspections of properties owned by [] individuals [on a written list of certain property owners, including Plaintiff] and to issue citations pursuant to said inspection, regardless of the actual conditions of the properties."); *id.* at (alleging "punitive inspections of certain properties, *known to be owned by Plaintiff and certain other individuals*, without having first received any documented report of either a complaint or [indication of code deficiency]" (emphasis added)).

Mr. Mims has failed to allege facts sufficient to make plausible the existence of such similarly situated parties who were treated differently than Mr. Mims, he has failed to state a "class of one" Equal Protection claim.[3]

The Court therefore will dismiss Mr. Mims' Fourteenth Amendment Equal Protection claim.  Because Mr. Mims could conceivably amend his pleadings to cure the current pleading defects, the Court will dismiss Count II without prejudice and with leave to amend.

### B.   Count III: Violation of 42 U.S.C. § 1983 – Fourteenth Amendment Due Process Clause

Count III of the Amended Complaint, brought pursuant to 42 U.S.C. § 1983, asserts that New Castle has violated the Fourteenth Amendment's Due Process Clause.  Specifically, Mr. Mims alleges New Castle "arbitrarily and unjustly deprived [him] of legally protected property interests without providing him adequate notice and a fair opportunity to be heard," ECF No. 11 ¶ 70;  as such, the Court interprets Mr. Mims' Count III as a procedural due process claim.

Mr. Mims contends that he "had no genuine recourse under the law to address [New Castle's] unlawful deprivation of the use of his property."  ECF No. 15 at 3–4.  New Castle responds that Mr. Mims cannot state a claim for procedural due process violations because he had avenues available to challenge the alleged deprivations, and in many instances took advantage of such avenues.  ECF No. 14 at 5–7.

To state a claim for a violation of procedural due process, Mr. Mims must allege that (1) he was deprived of an interest that is protected by the Fourteenth Amendment and (2) the procedures available did not provide "due process of law."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–

---

[3] As such, the Court need not consider whether Plaintiff's Amended Complaint has sufficiently pled the lack of a rational basis for Defendant's treatment or Defendant's arguments regarding a statute of limitations defense.  *See* ECF No. 24 at 4–5.

34 (3d Cir. 2006).  A plaintiff must have taken advantage of the available procedures, unless those procedures are unavailable or patently inadequate.  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Plaintiff alleges that his "ownership interests and right to use and enjoy his property in a lawful manner" are constitutionally protected, ECF No. 11 ¶ 69, but neither party discusses whether Mr. Mims was deprived of an interest that is protected by the Fourteenth Amendment. Even assuming that Mr. Mims does have such a protected interest, which the Court need not decide here, the Amended Complaint does not allege facts showing that New Castle failed to afford Mr. Mims adequate process under the Fourteenth Amendment.

Mr. Mims' Amended Complaint addresses three types of actions by New Castle's officials or employees:  citations, failed inspection reports, and occupancy permits.  *See* ECF No. 11 ¶¶ 71–72.  Mr. Mims alleges that "unlawful and unjust enforcement of the rental inspection program" did not provide "an opportunity for recourse under the law."  *See* ECF No. 11 ¶ 73.  However, "[i]n each instance [of a citation], [Mr. Mims] challenged the validity of the citation in the Magisterial District Court." ECF No. 11 ¶ 149.  Mr. Mims' Amended Complaint fails to allege how the process to challenge a citation, of which he took advantage, was constitutionally defective.

With respect to failed inspection reports and occupancy permits, the Amended Complaint does not allege facts sufficient to show that no process was available to Mr. Mims, nor does he allege how that process, if available, was deficient.  Mr. Mims' Amended Complaint only alleges in a conclusory manner that he did not have "adequate notice and a fair opportunity to be heard" and "the right of recourse."  ECF No. 11 ¶¶ 70–73.

The Court therefore will dismiss Mr. Mims' Fourteenth Amendment Procedural Due Process claim.  Because Mr. Mims could conceivably amend his pleadings to cure the current pleading defects, the Court will dismiss Count III without prejudice and with leave to amend.

### C.    Count IV: Violation of 42 U.S.C. § 1983 – Commerce Clause

The Amended Complaint contains a claim for a violation of the Commerce Clause in Article I, Section 8, Clause 3 of the United States Constitution.  ECF No. 11 ¶¶ 79–88.  However, in his supplemental brief, Mr. Mims withdraws this claim and "acknowledges and agrees that [New Castle]'s Motion to Dismiss should be sustained as these claims are better suited to be addressed under his Equal Protection challenges."  ECF No. 23 at 9–10.

In light of Mr. Mims' withdrawal of this claim, Count IV is dismissed with prejudice and without leave to amend.

### D.    Count V:  42 U.S.C. 1983 – Eighth Amendment

In Count V, Mr. Mims alleges a violation of the Eighth Amendment's prohibition on cruel and unusual punishment stemming from New Castle's "refusal to award an occupancy permit to [Mr. Mims], thereby rendering his property unrentable."  ECF No. 11 ¶¶ 94, 96.  New Castle contends that Mr. Mims cannot state a claim under the Eighth Amendment, because the Eighth Amendment applies only to persons convicted of crimes.  In his opposition to New Castle's Motion, Mr. Mims raises the issue of excessive fines.  *See* ECF No. 15 at 7.

The Eighth Amendment prohibits cruel and unusual punishments as well as excessive fines and bail.  U.S. Const. amend. XVIII.  With respect to the prohibition on cruel and unusual punishment, "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [The] State does not acquire the power to punish with which the Eighth Amendment is concerned until after it

has secured a formal adjudication of guilt in accordance with due process of law." *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Mr. Mims' Amended Complaint is bereft of any reference to a criminal conviction.

With respect to excessive fines, Mr. Mims raises for the first time in his Response to New Castle's Motion, an argument based on *Timbs v. Indiana*, 139 S.Ct. 682 (2019). In *Timbs*, the Supreme Court applied the Eighth Amendment excessive fines clause to civil in rem forfeiture proceedings "when they are at least partially punitive." *Timbs v. Indiana*, 139 S.Ct. 682, 690 (2019). The Court need not address the viability of Mr. Mims' argument at this time, because "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commw. Of Pa. Ex. Rel Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1984)).

The Court therefore will dismiss Mr. Mims' Eighth Amendment claim in Count V without prejudice and with leave to amend.

### E.        Count VII: 42 U.S.C. 1983 – Fourth Amendment

Mr. Mims alleges that New Castle has violated his Fourth Amendment privacy interest in the interior of his rental properties, and that to the extent that Mr. Mims had previously consented to searches of the interiors of his rental properties, such consent did not authorize warrantless searches in perpetuity. ECF No. 15 at 8–9. New Castle responds that Mr. Mims fails to plead facts sufficient to show that the inspections were carried out without Mr. Mims' or his tenant's consent. ECF No. 14 at 10–12. New Castle also contends that the inspections qualify as an administrative search of a highly regulated industry that is exempt from the warrant requirement. *Id.*

To have standing to bring a Fourth Amendment claim for a warrantless search, a landlord must allege a "subjective expectation of privacy in his tenant's apartment." *Cole v. Encapera,* Civil Action No. 15-104, 2016 U.S. Dist. LEXIS 50275 at *9–10 (W.D. Pa. Apr. 14, 2016) (Eddy, M.J.). A landlord does not have a reasonable expectation of privacy with respect to individual apartments leased to third parties, simply on the basis that the landlord owns the apartments. *Marcavage v. Borough of Lansdowne, Pa.*, 826 F. Supp. 2d 732, 740 (E.D. Pa. 2011) (collecting cases); *see also Beatty v. Twp. of Elk*, No. 08-2235 (RBK/JS), 2010 U.S. Dist. LEXIS 36673 at *18–19 (D.N.J. Apr. 14, 2010) (noting that "it is well-established that ownership of property alone is insufficient to confer standing"); *Godshalk v. Borough of Bangor*, No. 03-1465, 2004 U.S. Dist. LEXIS 7962 at *30–31 (E.D. Pa. May 5, 2004) (finding that landlord did not have standing under the Fourth Amendment because "privacy rights are personal, and cannot be asserted vicariously" and "ownership alone is insufficient to confer standing to contest a search.").

The Amended Complaint alleges that Code Enforcement Officers carried out "punitive inspections of certain properties, known to be owned by [Mr. Mims]" and "would appear unannounced and without notice at [Mr. Mims'] rental properties and demand that *the tenants authorize* their warrantless entries into these properties." ECF No. 11 ¶¶ 23, 39 (emphasis added). According to the Amended Complaint, these "non-routine door-to-door inspections at [Mr. Mims'] rental units," were "without cause, notice or due process being afforded to [Mr. Mims]." ECF No. 11 ¶ 40.

Although Mr. Mims alleges a privacy interest relating to his role "as an owner of real property" regarding "the interior of the home and the manner in which he decorates, designs, or otherwise maintains the residence," ECF No. 15 at 8, the mere ownership of rental units is

insufficient to establish standing as Mr. Mims fails to allege additional facts to give rise to a "subjective expectation of privacy" in his any of the rental units.

Construing the Amended Complaint's factual allegations in the light most favorable to Mr. Mims, to the extent that Mr. Mims seeks to allege a Fourth Amendment violation related to the inspections for the issuance of occupancy permits for vacant residential units, ECF No. 11 ¶ 24, there is no indication in the Amended Complaint that he did *not consent* to the inspection of the vacant units to apply for the occupancy permit. *See United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (noting that consent is a well-established exception to the warrant requirement by the Fourth Amendment). Indeed, the Amended Complaint states that he regularly interacted with the Code Enforcement Officers, "[i]n an effort to obtain occupancy permits for his rental properties." ECF No. 11 ¶ 21. To receive an occupancy permit, Article § 1743A.02(b) of the City of New Castle Building and Housing Code requires an inspection. The Amended Complaint demonstrates an active participation in the process to further his rental business, without alleging that inspections for the occupancy permits were performed without his consent.

As such, the Court finds that Mr. Mims has not pled sufficient facts to state a claim for relief under the Fourth Amendment. The Court therefore will dismiss Mr. Mims' Fourth Amendment claim. Because Mr. Mims could conceivably amend his pleadings to cure the current pleading defects, the Court will dismiss Count VII without prejudice and with leave to amend.

## F.  Count VIII: Violation of 42 U.S.C. § 1982

In Count VIII, Mr. Mims alleges that New Castle violated 42 U.S.C. § 1982 by depriving Mr. Mims of his right to "offer for rent, contract for leaseholds, and otherwise permit minorities to live in his rental units within the City of New Castle in the same manner in which he was able to offer … white citizens to live in his rental units." ECF No. 11 ¶¶ 115–16. New Castle contends

that Mr. Mims has not pled an intentional discrimination claim under § 1982, ECF No. 14 at 12, which Mr. Mims concedes.  ECF No. 15 at 9–10.  However, Mr. Mims clarifies that his § 1982 is a *retaliation* claim and not a *discrimination* claim.  *Id.*  Nonetheless, the Amended Complaint fails to allege a retaliation claim for the reasons set forth below.  ECF No. 15 at 9.

Under 42 U.S.C. § 1982, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.  Courts have acknowledged the existence of a § 1982 retaliation claim. *CBOCSWest, Inc. v. Humphries*, 553 U.S. 442, 447 (2008) (discussing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 6 (1969), *abrogated on other grounds by Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017)).

The Third Circuit has not defined the elements of a § 1982 retaliation claim, *see Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 483 (M.D. Pa. 2012), however, the Supreme Court and other courts have "construed §§ 1981 and 1982 alike." *CBOCSWest*, 553 U.S. at 448; *see also Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001)) (applying the Second Circuit's § 1981 retaliation elements to a § 1982 claim); *Peet v. Morfitt*, 2020 U.S. Dist. Lexis 120667 (D. Minn. July 9, 2020).

We will adopt that approach and apply the § 1981 standard to Mr. Mims' § 1982 retaliation claim.  To establish a prima facie case, a plaintiff must allege facts to show that:  (i) plaintiff was engaged in a protected activity;  (ii) defendant took an adverse action against plaintiff;  and (iii) there was a causal connection between plaintiff's participation in the protected activity and the adverse action. *Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017).

Here, even assuming the first two elements are sufficiently pled, Mr. Mims' conclusory allegations regarding causal connection are insufficient to satisfy the third element.  Mr. Mims

simply alleges that "[t]he City of New Castle, developed a custom and policy to enforce Code Ordinances and the rental inspection program in a discriminatory manner *resulting* in the unlawful withholding of occupancy permits to [Mr. Mims] *because of his propensity* to rent or otherwise enter into leasehold agreements with minorities and people of physical and/or mental disabilities." ECF No. 11 ¶ 64 (emphasis added).  Mr. Mims alleges that he has received at least 50 citations and an unspecified number of failed inspection reports and occupancy permit denials from 2006 to 2019.  *See* ECF No. 11 ¶¶ 25, 27, 29.  However the mere occurrence of these alleged actions, plus the allegations regarding the demographics of Mr. Mims' tenants,[4] *see* ECF No. 11 ¶¶ 15–17, are not sufficient to show a causal connection.  In other words, merely juxtaposing two sets of facts—(1) Mr. Mims rents units to members of a protected class and (2) Mr. Mims has received many citations, failed inspection reports, and occupancy permit denials from New Castle—is insufficient to plead causation.  Rather, Mr. Mims must plead facts that, directly or indirectly, plausibly allege the necessary causal relationship between Mr. Mims' activities and the alleged retaliation by New Castle.

For example, Mr. Mims provides no information about what the typical rate of adverse actions (citations, failed inspection reports, or denials occupancy permits) is in New Castle for a landlord similarly situated to Mr. Mims.  Mr. Mims also does not show that other landlords who do not rent to racial minorities are more favorably treated than Mr. Mims (i.e., that those other landlords do not receive similar adverse actions from code enforcement officers).

Mr. Mims' factual allegations are not sufficient "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, the Court will therefore dismiss Mr. Mims' § 1982

---

[4] As discussed in footnote 6, the figures cited in Plaintiff's Amended Complaint fail to show that he rents to racial minorities at a rate different from New Castle's population.

claim.  Because Mr. Mims could conceivably amend his pleadings to cure the current pleading

defects, the Court will dismiss Count VIII without prejudice and with leave to amend.

### G.  Count IX: Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

Mr. Mims' Amended Complaint appears to include various Fair Housing Act claims under

§ 3604 (Discrimination in the Sale or Rental of Housing and Other Prohibited Practices) and

§ 3617 (Interference, Coercion, or Intimidation) stemming from New Castle's implementation of

"code enforcement regulations and rental inspection programs in a discriminatory manner."  ECF

No. 11 ¶¶ 125–29.  The parties did not specifically address Mr. Mims' Count IX in their initial

briefing, and the Court ordered supplemental briefing regarding each of Mr. Mims' claims under

the Fair Housing Act, including the issue of standing.[5]  ECF No. 18.  Mr. Mims' supplementary

brief clarifies that he is not a member of a protected class, but he is bringing a disparate treatment

claim and is applying an adapted version of the burden shifting framework found in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).  ECF No. 23 at 6.  New Castle alleges that because

Mr. Mims does not identify any relevant citations, Mr. Mims "fails to allege sufficient facts from

which one could infer that the race or disability of a prospective tenant was a motivating factor in

the issuance of the citation."  ECF No. 24 at 9.

The Fair Housing Act prohibits housing discrimination on the basis of, *inter alia*, race,

gender, and national origin as well as disability.  *431 E. Palisade Ave. Real Estate, LLC v. City of*

---

[5] The FHA permits any "aggrieved person" to bring a housing-discrimination lawsuit.  42 U.S.C. § 3613(a).  An "aggrieved person" is defined as "any person who" either "claims to have been injured by a discriminatory housing practice" or believes that such an injury "is about to occur."  42 U.S.C. § 3602(i).  Thus, standing under the FHA is defined "as broadly as is permitted by Article III of the Constitution.'"  *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296 (2017) (citing *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 209 (1972)).  As such, a plaintiff must allege (and eventually prove) that plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Cottrell v. Alcon Labs.*, 874 F.3d 154, 161-62 (3d Cir. 2017).  Because "at the dismissal stage, the Court assumes that a plaintiff has stated valid legal claims," *Cottrell*, 874 F.3d at 161-62, Plaintiff's Amended Complaint alleges financial injuries due to Defendant's custom, policy and practice of taking punitive measures against Plaintiff because of the persons to whom Plaintiff rents.

*Englewood*, 977 F.3d 277, 283 (3d Cir. 2020). "The FHA can be violated by either intentional

discrimination [or, disparate treatment] or if a practice has a disparate impact on a protected class."

*Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir.

2011) (citing *Cmty. Servs. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005)). Here, Mr.

Mims clarifies that his claim is based on alleged disparate treatment. ECF No. 23 at 6.

In the Third Circuit, "to prevail on a disparate treatment claim, a plaintiff must demonstrate

that some discriminatory purpose was a 'motivating factor' behind the challenged action." *City of*

*Englewood*, 977 F.3d at 284 (citing *Wind Gap Mun. Auth.*, 421 F.3d at 176–77. "The

discriminatory purpose need not be malicious or invidious, nor need it figure [sic] 'solely,

primarily, or even predominantly' into the motivation behind the challenged action." *Id.* When

the allegations are not based on a facially discriminatory policy and a plaintiff relies on indirect

evidence of discrimination, courts have typically used the *McDonnell Douglas* burden-shifting

analyses once plaintiff has made a prima facie showing of discrimination under a specific claim.

*Id.*; *Curto v. A Country Place Condo. Ass'n*, 921 F.3d 405, 4010 n.3 (3d Cir. 2019).

Here, Mr. Mims' supplemental brief alleges that "[a]dapted to this situation, the prima facie

case elements are: (1) plaintiff's rights are protected under the [Fair Housing Act]; and (2) as a

result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable

injury." ECF No. 23 at 6. At this juncture, the Court need not consider whether Mr. Mims' adapted

prima facie case is appropriate, *see McDonnell Douglas Corp.*, 411 U.S. at 802 n.13, because the

Third Circuit has recognized that the post-*Twombly* pleading standard "simply calls for enough

facts to raise a reasonable expectation that discovery will reveal evidence of the necessary

element[s]." *Connolly v. Lane Constr. Corp.,* 809 F.3d 780, 789 (3d Cir. 2016); *cf. Lindsay v.*

*Yates*, 578 F.3d 407 (6th Cir. 2009) (noting at summary judgment stage that "the key question …

is whether the plaintiffs have 'presented sufficient evidence to permit a reasonable jury to conclude [they] suffered' an adverse housing action 'under circumstances giving rise to an inference of unlawful discrimination' not whether the prima facie elements specifically articulated in *McDonnell Douglas*… could be established").

Even when construing the Amended Complaint's factual allegations in the light most favorable to Mr. Mims, the Amended Complaint fails to allege facts sufficient to raise a reasonable expectation that discovery will reveal evidence of disparate treatment—that some discriminatory purpose was a 'motivating factor' behind the challenged action.  *See Eastampton Ctr. v. Twp. of Eastampton*, 155 F. Supp. 2d 102, 112 (D.N.J. 2001) (finding that "[p]laintiffs have failed to present any evidence that [d]efendants have engaged in selective enforcement or targeted housing developments … to treat this group differently.").

First, the Amended Complaint does not show that Mr. Mims provides housing to minorities[6] at a rate greater than the City of New Castle's population,[7] though Mr. Mims alleges that New Castle's behavior is due to his "propensity to rent or otherwise enter into leasehold agreements with minorities and people of physical and/or mental disability."  ECF No. 11 ¶¶ 64, 75.  Mr. Mims alleges that he "would be issued a citation for a fabricated defective condition" when "it was learned that an 'unapproved' or 'undesirable' tenant lived at one of these rental units," ECF No. ¶ 41, without providing a single example of such instance.  Further, even when considering Mr. Mims' minimalistic allegations of certain comments and the existence of a list

---

[6] With respect to minorities, Plaintiff Amended Complaint states that "[t]he racial makeup of the City population is approximately 83.2% white, 12.2% African American, 1.6% Latino, 0.1% Native American, 0.4% Asian, 0.1% Pacific Islander," ECF No. 11 ¶ 9, and that "[a]pproximately ten (10%) to fifteen (15%) percent of Plaintiff's rentals are to persons who are properly classified as ethnic minorities, with a large percentage of these minorities being of the African American race."  *Id.* at 17.

[7] Plaintiff states that "[a]pproximately one-half (1/2) or more of Plaintiff's rentals are to persons with some degree of mental or physical disability," ECF No. 11 ¶ 16, but does not provide any relevant statistics with respect to New Castle's population.

and handwritten instructions to carry out "punitive inspections of certain properties," *see* ECF No. 11 ¶¶ 23, 33, 34, 35, 38, 39, Mr. Mims' allegations of 50 citations and an unspecified number of failed inspection reports and occupancy permit denials over a 13-year period, as discussed above in Count VIII, do not allege sufficient facts to raise a reasonable expectation that discriminatory purpose was a motivating factor. [8]

Therefore, the Court will dismiss Count IX for failure to state a claim. Because Mr. Mims could conceivably amend his pleadings to cure the current pleading defects, the Court will dismiss Count IX without prejudice and with leave to amend.

### H. Application of Twombly/Iqbal to the Amended Complaint

With respect to the remaining Counts (Count I – Violations of Due Process under United States and Pennsylvania Constitutions; Count VI – Violation of 42 U.S.C. § 1983 – Fifth Amendment Takings; Count X – Tortious Interference with Contract; and Count XI – Abuse of Process), New Castle's only argument for dismissal is that the Amended Complaint fails to meet the pleading standard of *Twombly* and *Iqbal*, and Mr. Mims should be required to identify each and every violation that serves as the basis for this action. ECF No. 14 at 12–14.

Mr. Mims responds that he "has asserted factual allegations sufficient to establish that a culture was developed within the governing and regulatory bodies of the City of New Castle that failed to enforce its rental inspection program in a fair and even-handed manner." ECF No. 15 at 11.

Under the notice pleading standard from *Twombly*/*Iqbal* and Federal Rule of Civil Procedure 8, a plaintiff "must raise a right to relief above the speculative level" without resting on mere labels and conclusions. *Twombly*, 550 U.S. at 555. Under this standard, when determining

---

[8] As such, the Court need not consider Defendant's arguments regarding a statute of limitations defense. *See* ECF No. 24 at 10.

whether a plaintiff has set forth a plausible claim for relief, the plaintiff must show "more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Conclusory or bare bones allegations without factual support are insufficient to survive the plausibility standard. *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014).

Even considering the factual allegations in the light most favorable to Mr. Mims, the Amended Complaint fails to meet this standard. Although Mr. Mims is not necessarily required, at the motion to dismiss stage, to *itemize* every specific citation, failed inspection report, and denial of occupancy permit, he must do more than make conclusory allegations as to New Castle's alleged custom, policy and practice of taking punitive actions against Mr. Mims due to the characteristics of his tenants. Here, Mr. Mims does not identify or describe the circumstances surrounding a single citation, failed inspection report, or denial of occupancy permit over a 13-year period. Further, Mr. Mims only vaguely alleges the mere existence of a written list and instructions that, along with alleged comments by officials, purportedly set forth New Castle's custom and policy that that punitive measures should be taken against Mr. Mims due to the identity of his tenants. *See* ECF No. 11 ¶¶ 23, 33, 38, 39. For example, even Mr. Mims' most specific allegation—that he was "specifically informed that if [he] rented his properties to [certain persons], unfavorable actions would be taken against [him]," ECF No. 11 ¶ 35, does not provide New Castle with any notice as to how this information was given, when this occurred, or who made this comment. Taken together, the facts in the Amended Complaint do not give notice to New Castle of the existence and plausible factual foundations for his claims. *See EEOC v. Ruby Tuesday, Inc.*, 919 F. Supp. 2d 587, 592 (W.D. Pa. 2013) (Hornak, C.J., then-J.).

Therefore, the Court will dismiss Counts I, VI, X, and XI for failure to state a claim. Because Mr. Mims could conceivably amend his pleadings to cure the current pleading defects, the Court will dismiss Counts I, VI, X, and XI without prejudice and with leave to amend.

### I.    Punitive Damages

As part of Count IX (Violation of the Fair Housing Act), Mr. Mims alleges that New Castle's behavior "was intentional, malicious and in wanton or reckless disregard of the rights and feelings" thus entitling him to punitive or exemplary damages. *See* ECF No. 11 ¶ 132. New Castle argues that punitive damages are not recoverable and that "any claim for punitive damages must be dismissed, with prejudice." *See* ECF No. 14 at 14–15. Mr. Mims responds that punitive damages against a municipality may be permitted by statute, in this case, the Fair Housing Act. *See* ECF No. 15 at 13. Mr. Mims also argues that "a dismissal of punitive damages at a pre-discovery stage is improper." *See* ECF No. 15 at 13.

The availability of punitive damages presupposes the existence of a viable claim. Because the Court will dismiss the Amended Complaint, and there can be no independent claim for punitive damages standing alone, any claim for punitive damages must also be dismissed. If Mr. Mims files a second amended complaint, he may choose to reassert his request for punitive damages with respect to a Fair Housing Act claim.

### IV.    Conclusion

For the foregoing reasons, the Court will GRANT New Castle's Motion to Dismiss the Amended Complaint, ECF No. 12, as set forth in the accompanying Order.

DATED this 30th day of November, 2021.

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge




cc (via ECF email notification):

All Counsel of Record